UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| YVETTE OLIVER | CIVIL ACTION |
| v. | NO. 19-12377 |
| COVIDIEN LP, ET AL. | SECTION "F" |

ORDER AND REASONS

Before the Court is Covidien's motion to dismiss Yvette Oliver's second amended complaint. For the reasons that follow, the motion is DENIED.

**Background**

This products-liability action arises from injuries Yvette Oliver says she suffered due to Covidien's marketing of a handheld vessel-sealing device called "LigaSure." At issue is whether Oliver has stated plausible claims against Covidien under the Louisiana Products Liability Act (LPLA), La. Rev. Stat. §§ 9:2800.52 — 9:2800.60. She has.

In late summer 2018, Yvette Oliver saw Dr. Chevies Newman, complaining of stomach pain. She underwent an open hysterectomy a week later. During the surgery, Dr. Newman used a Covidien handheld LigaSure device to seal one of Oliver's blood vessels. Although

1

Oliver had high blood pressure, Dr. Newman did not tie off the vessel with a suture. The seal did not hold. After the procedure, Oliver began bleeding internally. This lawsuit followed.

Oliver originally sued Covidien for negligence and violations of the LPLA. She complained, principally, that Covidien over-sold the LigaSure's vessel-sealing capabilities. For example, she said that Covidien should have warned surgeons not to use the LigaSure without first placing suture ties around "prominent" vessels.

In response, Covidien moved to dismiss for failure to state a claim. The Court granted the motion, in part, holding that: (1) Oliver failed to state a negligence claim because such claims are not cognizable under the LPLA; (2) Oliver failed to state an LPLA warning-defect claim because she failed to allege facts creating a reasonable inference that, but for Covidien's defective warning, Dr. Newman would not have used the LigaSure or would have used it differently; (3) Oliver failed to state an LPLA design-defect claim because she failed to allege facts creating a reasonable inference that a safer alternative design for the LigaSure existed; (4) Oliver failed to state an LPLA warranty-defect claim because she failed to identify an express warranty that Covidien allegedly breached; and (5) Oliver failed to state an LPLA construction-defect claim because she failed to identify any "specifications or performance standards" from which the LigaSure "deviated in a

2

material way." Consequently, the Court dismissed the negligence claim with prejudice, but granted Oliver leave to amend her complaint to attempt to state plausible LPLA claims. See Order and Reasons of 2/5/20.

Oliver timely amended. In her latest complaint, she tries to state three LPLA claims: a warning-defect claim, a warranty-defect claim, and a construction-defect claim.

For her warning-defect claim, Oliver says Covidien failed to warn Dr. Newman that, before using the handheld LigaSure, he should dissect and isolate the patient's blood vessels or place a suture tie or vessel clamp around them. Had Covidien appropriately warned Dr. Newman, Oliver alleges, Dr. Newman: (a) "would not have used the device" at all; (b) "would not have used the device without properly dissecting and isolating vessels"; or (c) "would not have used the device without concomitant use of suture ties." Oliver adds that Dr. Newman "reviewed and relied upon [Covidien's] informational and/or marketing materials . . . when he decided to use [Covidien's] product[.]"

For her warranty-defect claim, Oliver says Covidien falsely warranted that the handheld LigaSure "permanently fuses vessels up to and including 7 mm in diameter and tissue bundles without dissection or isolation." Oliver says this false warranty caused Dr. Newman to use the handheld LigaSure.

3

For her construction-defect claim, Oliver says the handheld LigaSure "deviated in a material way" from Covidien's "performance standard" for the device. Specifically, the LigaSure Dr. Newman used during Oliver's hysterectomy did not, in fact, "permanently fuse vessels up to and including 7 mm in diameter and tissue bundles without dissection or isolation."

Attached to Oliver's complaint is the affidavit of her surgeon, Dr. Newman. In that affidavit, Dr. Newman attests that he "was led to believe" that surgeons "did not have to dissect or isolate any vessels and could completely do away with suture ties when sealing vessels with the LigaSure[.]" He also attests that, had Covidien warned him of the need to use suture ties or isolate prominent vessels, he would not have: (a) used the device at all; (b) used the device without suture ties; or (c) used the device without "properly isolating the vessel or tissue[.]"

Now, Covidien moves to dismiss under Rule 12(b)(6), contending that Dr. Newman's affidavit contradicts the allegations of Oliver's second amended complaint and precludes her from plausibly pleading causation.

I.

A complaint must contain a short and plain statement of the claim showing that the pleader is entitled to relief. FED. R. CIV. P. 8(a)(2). A party may move to dismiss a complaint that fails this requirement. See FED. R. CIV. P. 12(b)(6).

In considering a Rule 12(b)(6) motion, the Court accepts all well-pleaded facts as true and views those facts in the light most favorable to the plaintiff. Thompson v. City of Waco, Tex., 764 F.3d 500, 502 (5th Cir. 2014) (citing Doe ex rel. Magee v. Covington Cty. Sch. Dist. ex rel. Keys, 675 F.3d 849, 854 (5th Cir. 2012) (en banc)). Conclusory allegations are not well pleaded and so are not accepted as true. See Thompson, 764 F.3d at 502-03 (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).

To overcome a Rule 12(b)(6) motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Gonzalez v. Kay, 577 F.3d 600, 603 (5th Cir. 2009) (quoting Iqbal, 556 U.S. at 678). A claim is facially plausible if it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. at 678.

"A complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations[.]" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). But it must contain "more than

5

labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." Id. at 555.

II.

Jurisdiction is based on diversity of citizenship, so the Court applies the substantive law of the forum, Louisiana.[1] See Boyett v. Redland Ins. Co., 741 F.3d 604, 607 (5th Cir. 2014) (citing Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938)). Because Louisiana choice-of-law rules are substantive, they apply here. See Weber v. PACT XPP Tech., AG, 811 F.3d 758, 770 (5th Cir. 2016) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496-97 (1941)). The first step under those rules is determining whether the laws of two or more states conflict. Lonzo v. Lonzo, 17-0549, p. 12 (La. App. 4 Cir. 11/15/17); 231 So. 3d 957, 966. If they do not, the Court applies forum law; if they do, further analysis is required. See Am. Elec. Power Co. v. Affiliated FM Ins. Co., 556 F.3d 282, 285 n.2 (5th Cir. 2009). The parties have not identified a conflict, and the Court has not found one. So the Court applies Louisiana substantive law and turns to the merits.

---

[1] The parties are completely diverse: Oliver is a citizen of Louisiana; Medtronic is a Minnesota corporation with a principal place of business in Minnesota; and Covidien is a limited partnership with no Louisiana members. The amount in controversy exceeds $75,000, exclusive of interest and costs.

III.

Covidien contends that Oliver fails to state LPLA claims.

A.

The LPLA creates a cause of action against a product manufacturer "for damage proximately caused by a characteristic of the product that renders the product unreasonably dangerous when such damage arose from a reasonably anticipated use of the product." LA. REV. STAT. § 9:2800.54(A). This liability is exclusive: A claimant cannot otherwise sue a manufacturer for damage caused by its product. See LA. REV. STAT. § 9:2800.52.

An LPLA claimant must plead four elements: "(1) that the defendant is a manufacturer of the product; (2) that the claimant's damage was proximately caused by a characteristic of the product; (3) that this characteristic made the product 'unreasonably dangerous'; and (4) that the claimant's damage arose from a reasonably anticipated use of the product by the claimant or someone else." Stahl v. Novartis Pharm. Corp., 283 F.3d 254, 260-61 (5th Cir. 2002).

A product can be "unreasonably dangerous" in four ways: (1) defective construction or composition, LA. REV. STAT. § 9:2800.55; (2) defective design, LA. REV. STAT. § 9:2800.56; (3) inadequate warning, LA. REV. STAT. § 9:2800.57; and (4) nonconformity with an express warranty, LA. REV. STAT. § 9:2800.58.

7

Oliver alleges that Covidien's handheld LigaSure was "unreasonably dangerous" in all but its design.[2]

1.

For its first challenge, Covidien contends that Oliver fails to state an LPLA warning-defect claim because she fails to plead causation under the learned-intermediary doctrine.

A product is unreasonably dangerous for lack of an adequate warning if, "at the time the product left its manufacturer's control, the product possessed a characteristic that may cause damage and the manufacturer failed to use reasonable care to provide an adequate warning of such characteristic and its danger to users and handlers of the product." LA. REV. STAT. § 9:2800.57(A).

The learned-intermediary doctrine applies to LPLA warning-defect claims. Theriot v. Danek Med., Inc., 168 F.3d 253, 256 (5th Cir. 1999) (per curiam). That doctrine holds that a manufacturer need not warn a patient; it need only warn the physician. Willett v. Baxter Intern., Inc., 929 F.2d 1094, 1098 (5th Cir. 1991).

To state a warning-defect claim in light of this doctrine, Oliver must allege: (1) that Covidien failed to warn Dr. Newman of a risk associated with the use of the handheld LigaSure, not otherwise known to Dr. Newman; and (2) that Covidien's failure to

---

[2] Oliver originally alleged an LPLA design-defect claim, but she omitted the claim from her second amended complaint.

8

warn was the cause in fact and proximate cause of Oliver's injuries. See Willett, 929 F.2d at 1098. To satisfy the causation component, Oliver must allege facts creating an inference that "a proper warning would have changed the decision of [her] treating physician, i.e., that but for the inadequate warning, the treating physician would not have used" the handheld LigaSure for her open hysterectomy. Willett, 929 F.2d at 1098-99.

Oliver has so alleged. In count one of her second amended complaint, she alleges that Dr. Newman "reviewed and relied upon [Covidien's] representations regarding the specific device at issue in this litigation." Had these representations included an adequate warning, Oliver alleges, Dr. Newman: (a) "would not have used the device" at all; (b) "would not have used the device without properly dissecting and isolating vessels"; or (c) "would not have used the device without concomitant use of suture ties." Oliver adds that Dr. Newman "reviewed and relied upon [Covidien's] informational and/or marketing materials . . . when he decided to use [Covidien's] product[.]"

Covidien, however, looks beyond Oliver's allegations to the affidavit accompanying her second amended complaint. Covidien says that affidavit precludes Oliver from pleading causation because it shows that—contrary to Oliver's allegations—Dr. Newman never read the warning for the handheld LigaSure device. And because Dr.

9

Newman never read the warning for the specific device, Covidien reasons, the warning cannot have caused Oliver's injuries.[3]

The Court disagrees. True, "when an allegation is contradicted by the contents of an exhibit attached to the pleading, then . . . the exhibit and not the allegation controls." Smit v. SXSW Holdings, Inc., 903 F.3d 522, 528 (5th Cir. 2018) (citation omitted). But there is no contradiction here.

Dr. Newman's affidavit does not establish, as Covidien contends, that Dr. Newman "never saw, read, or relied on any marketing or warranty materials related to the hand-held LigaSure model." On the contrary, the affidavit says that Dr. Newman "received and relied upon representation in defendants' marketing and informational materials and/or communicated by defendants' representatives that are consistent with the marketing materials [of the handheld LigaSure]." This statement does not contradict Oliver's allegation that Dr. Newman "reviewed and relied upon

---

[3] Covidien contends that the causation component of an LPLA warning-defect claim requires the patient to show that the learned intermediary read and relied on the specific warning the manufacturer provides with the product. Not so. The LPLA and the case literature construing it confirm that a patient need only show that, "but for the inadequate warning, the treating physician would not have used" the product. Willett, 929 F.2d at 1098-99. This requirement could be met if, for example, the physician learned the content of the product's warning through a study of scientific literature or a conversation with a colleague.

[Covidien's] representations regarding the specific device at issue in this litigation." So, the Court declines to discredit the allegation on the ground that it conflicts with Dr. Newman's affidavit. Crediting the allegation, the Court finds that Oliver has stated a plausible warning-defect claim.

2.

For its second challenge, Covidien contends that Oliver fails to state a warranty-defect claim for the same reason she fails to state a warning-defect claim: Her allegations of causation contradict controlling statements contained in Dr. Newman's affidavit.

As noted, however, there is no contradiction. See § III(A)(1), supra. The Court thus rejects Covidien's warranty-defect argument for the same reason it rejected Covidien's warning-defect argument.

3.

For its third and final challenge, Covidien contends that Oliver fails to state a construction-defect claim because she fails to identify a "manufacturing specification" or describe how the handheld LigaSure failed to meet that specification.

But no "manufacturing specification" is needed; Oliver may invoke a "performance standard" instead. See LA. REV. STAT. § 9:2800.55. And she does so: She alleges that the handheld LigaSure

11

device violated the "performance standard" that the device "permanently fuses vessels up to and including 7 mm in diameter and tissue bundles without dissection or isolation." So, Covidien's construction-defect contentions lack merit.

IV.

Oliver has stated plausible LPLA claims against Covidien. Accordingly, IT IS ORDERED that Covidien's motion to dismiss is DENIED.

New Orleans, Louisiana, June 24, 2020

_____
MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE